# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE WYERMAN,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　Defendant. | Case No. ED CV 11-1876 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

Joanne Wyerman ("Plaintiff") challenges the Social Security Commissioner's ("Defendant") decision denying her application for disability benefits. Three issues are presented for decision here:

　　1.　　whether the Administrative Law Judge ("ALJ") properly held at step five[1] that Plaintiff can perform the occupations of packing machine operator, security gate guard, and retail sales clerk, (*see* Joint Stip. at 3-12);

---

[1]　At step five, the ALJ must identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

      2.    whether the ALJ properly assessed Plaintiff's credibility,[2] (*see id.* at 20-24); and

      3.    whether the ALJ properly and fully developed the record. (*See id.* at 17-19.)

The Court addresses – and rejects – Plaintiff's contentions below.

### A. The ALJ's Step Five Determination

Plaintiff first complains that the ALJ improperly concluded at step five that she could perform the duties of a security gate guard. (Joint Stip. at 6-7.) Specifically, Plaintiff argues that this position conflicts with her residual functional capacity prohibiting exposure to "extreme temperatures." (*Id.*; *see* Administrative Record ("AR") at 20.) Under the *Dictionary of Occupational Titles* ("DOT"), the position of security gate guard is partially spent outdoors (*e.g.*, patrolling building grounds and regulating traffic). *See* DOT 372.667-034. From this, Plaintiff reasons that the position would require exposure to "the weather frequently, including when it is hot, cold, snowing, [and] raining" and would thus conflict with her limitation against extreme temperatures. (Joint Stip. at 7.) Plaintiff's claim is untenable for at least two reasons.

First, Plaintiff's conclusion that the position of security gate guard requires exposure to extreme temperatures is contradicted by the very language of the DOT. Under the DOT, the position is described as requiring frequent exposure to the weather, but absolutely *no* exposure to "[e]xtreme [c]old," "[e]xtreme [h]eat," "[h]umid[ity]," or "[a]tmospheric [c]ond[itions]." *See* DOT 372.667-034.

Second, as a matter of mostly common, exposure to weather does not

---

[2] Plaintiff also raises – both as part of this issue and as a separate one (*see* Joint Stip. at 12-14) – the question of whether the ALJ properly determined that her activities of daily living establish an ability to perform substantial gainful activity. For the sake of efficiency, the Court will address that 'daily living' issue as part and parcel of its discussion of the ALJ's credibility analysis.

2

necessarily imply exposure to *extreme* temperatures, in and of itself. Granted, exposure to weather is an unavoidable fact of life, but "extreme" temperatures suggests a much rarer occurrence. It thus appropriate that the DOT would distinguish between the two notions.

Thus, Plaintiff's claim here is unconvincing, and the Court finds no error.[3]

B.  Plaintiff's Credibility

Plaintiff next asserts that the ALJ failed to present adequate reasons to reject her credibility. The Court disagrees.

An ALJ can reject a plaintiff's credibility "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Here, the ALJ provided *four* clear and convincing reasons in support of his credibility determination.

First, the ALJ found that the objective medical evidence does not support Plaintiff's alleged degree of disability. (AR at 21); *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (finding that a lack of supporting medical evidence can be one, but not the only, reason for rejecting a claimant's testimony). Specifically, the ALJ noted that while Plaintiff "testified at length about debilitating back pain," the medical evidence does not document "any ongoing evaluation or intensive treatment for back pain." (AR at 22; *see also,* AR at 34-38, 43.) Similarly,

---

[3]  Plaintiff also asserts – and Defendant concedes – error regarding the ALJ's finding that Plaintiff could perform the positions of packing machine operator and retail sales clerk. (Joint Stip. at 4-6, 8-9, 11.) But in light of the viability of the security gate guard position, the Court finds the error harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

there is no evidence suggesting the surgery that Plaintiff underwent in 2009 to alleviate her hand pain was unsuccessful. (AR at 21; *see* AR at 35 (Plaintiff's testimony regarding surgery).)

Second, the ALJ himself observed that Plaintiff arrived at the hearing with a quad cane, which naturally would require the ability to grip firmly. (AR at 21; *see* AR at 36 (Plaintiff's testimony about cane usage)); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("ALJ's personal observations may be used . . . in 'the overall evaluation of the credibility of [a claimant's] statements'"). That Plaintiff was able to use such a cane thus discounts the alleged severity of her hand impairments.

Third, the ALJ commented that the claims representative noticed no physical problems with Plaintiff after interviewing her. (AR at 22; *see* AR at 144 (claims representative's notes)); *see also Bell v. Astrue*, 2011 WL 4374992, at *6 (E.D. Cal. Sept. 19, 2011) (discrediting claimant with observations from agency employee). In particular, the representative remarked that Plaintiff was using orthopedic braces and did not appear to have any difficulty using her hands. (AR at 144.)

Fourth, and finally, in light of Plaintiff's claim that she visits her doctor on a monthly basis, the ALJ noted that the most recent medical evidence in the record is dated June 21, 2010 – that is, nearly six months before the date of the hearing. (AR at 21; *compare* AR at 36 (Plaintiff's testimony) *with* AR at 267-71 (last medical record).) Presumably, if Plaintiff did see her doctor on a monthly basis, one would normally expect records from those six months. Such inconsistencies sully Plaintiff's veracity. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (affirming use of ordinary techniques of credibility evaluation).

The Court does note, however, that the ALJ did, in fact, improperly find Plaintiff's activities of daily living to be inconsistent with the alleged severity of her conditions. Of these activities, the ALJ specifically noted Plaintiff driving and caring for her nine-year-old son with Attention Deficit Hyperactivity Disorder. (*See*

AR at 21.) But daily activities like "taking care of oneself, household tasks, hobbies, school attendance, club activities, or social programs" are not typically considered substantial gainful activities. *Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001). Such activities can only discredit a claimant if they are transferable to a work setting and constitute a substantial portion of one's day. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ provided no evidence – and the Court cannot find any – that would suggest that either is the case here. Thus, there appears to be no basis for discrediting Plaintiff on this ground. However, in light of the numerous valid reasons provided by the ALJ, this error is harmless. *See Carmickle*, 533 F.3d at 1162.

Accordingly, for the above reasons, the Court finds that the ALJ provided substantial evidence in support of his determination of Plaintiff's credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (the Court may not engage in second-guessing if the ALJ's credibility finding is supported by substantial evidence in the record).

C.   The ALJ's Duty to Develop the Record

Lastly, Plaintiff complains that the ALJ failed to adequately develop the record. (Joint Stip. at 18.) In support of her argument, Plaintiff cites the ALJ's aforementioned statement that, though Plaintiff claims to see her primary care doctor on a monthly basis, the most recent medical evidence in the record is dated June 21, 2010. (*Id.*; *compare* AR at 36 (Plaintiff's testimony) *with* AR at 267-71 (last medical record).) According to Plaintiff, the ALJ should have sought additional records upon noticing this discrepancy. (Joint Stip. at 18.)

However, an "ALJ's duty to develop the record further is triggered *only* when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (emphasis added). Plaintiff does not allege that either is the case here. Indeed, any such claim would be tenuous, considering that the missing documents, if

they exist, would constitute only six months' worth of medical records (and notably, still could not remedy Plaintiff's credibility which was discounted for three other independent reasons).  Hence, and all things considered, these records were not crucial to the resolution of Plaintiff's claims.  Accordingly, the Court determines that the ALJ sufficiently fulfilled his duty to develop the record.

For the above reasons, the Court finds substantial evidence supported the ALJ's decision that Plaintiff was not disabled.  *See Mayes*, 276 F.3d at 458-59.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: October 26, 2012

_____
Hon. Jay C. Gandhi
United States Magistrate Judge